| | |
|---|---|
| STATE OF MAINE<br>PENOBSCOT, ss | SUPERIOR COURT<br>CIVIL ACTION<br>DOCKET NO. CV-15-184 |
| RIKKI LYNN WHITE, of Bangor,<br>County of Penobscot, State of Maine<br><br>              Plaintiff<br><br>    vs.<br><br>PENOBSCOT COUNTY, a political<br>Subdivision of the State of Maine,<br><br>PENOBSCOT COUNTY SHERIFF'S<br>DEPARTMENT, d.b.a. Penobscot<br>County Jail, a political Subdivision of<br>the State of Maine<br><br>TROY MORTON, successor to<br>Glenn Ross, Sheriff, Penobscot County<br>Sheriff's Department, Penobscot<br>County Jail, Bangor, State of<br>Maine, in his Personal and Professional<br>Capacity,<br><br>WILLIAM E. MULHOLLAND,<br>Former Corrections Officer of the<br>Penobscot County Sheriff's Department,<br>Penobscot County Jail, State of Maine<br>in his Personal and Professional<br>Capacity as a Corrections Officer,<br><br>CAPTAIN RICHARD CLUKEY,<br>Administrator of the Penobscot County<br>Sheriff's Department, Penobscot County<br>Jail, in his Personal and Professional<br>Capacity,<br><br>          and<br><br>DR. JOSEPH FITZPATRICK,<br>Successor to Joseph Ponte, Commissioner,<br>Maine Department of Corrections,<br>Augusta, Maine<br>             Defendants | COMPLAINT<br>(Request for Jury Trial)<br><br>FILED<br>OCT 01 2015<br>PENOBSCOT JUDICIAL CENTER<br>PENOBSCOT COUNTY SUPERIOR COURT<br>BANGOR DISTRICT COURT<br><br>FILED<br>SEP 30 2015<br>PENOBSCOT JUDICIAL CENTER<br>PENOBSCOT COUNTY SUPERIOR COURT<br>BANGOR DISTRICT COURT |

NOW COMES, the Plaintiff, Rikki Lynn White, by and through her undersigned counsel, WILLEY LAW OFFICES, and hereby complains against the Defendants as follows:

## Jurisdiction and Venue

1. Jurisdiction is proper because at all times relevant herein the Plaintiff was a resident of Penobscot County Maine, and the Defendants were residents, or entities, or political subdivisions of the State of Maine.

2. Venue is proper as the alleged conduct occurred in Penobscot County, Maine.

## Parties

3. Plaintiff, Rikki Lynn White, is a 30 year old female citizen of the United States, who resides at 117 Church Rd., Bangor, ME 04401.

4. Defendant Penobscot County and the Penobscot County Sheriff's Department are public entities located in the County of Penobscot, State of Maine; the Penobscot County Sheriff's Department, and Jail are responsible for law enforcement and incarceration duties within the County of Penobscot, State of Maine, as well as management and staffing for the Penobscot County Jail, in cooperation and control of the State of Maine, Department of Corrections.

5. At all times mentioned herein, Defendant, Penobscot County, d.b.a. Penobscot County Jail, was and is now a political subdivision of the State of Maine existing as such under the laws of the State of Maine and the United States.

6. At all times mentioned herein, Defendant, Troy Morton, an individual and the Sheriff of Penobscot County, was duly elected and acting as Sheriff for the Defendant, Penobscot County, d.b.a. Penobscot County Jail (PJC), a political subdivision of the State of Maine, and was at all material times acting under color of State Law; Defendant Morton is the successor to Glen Ross, and is Sheriff, sued in his personal and professional capacities.

7. At all times mentioned herein, Defendant, William E. Mulholland, an individual, was duly appointed and acting as a corrections officer for the Penobscot County Sheriff's Department, and Penobscot County Jail, was at all material times herein acting under the color of state law; Defendant Mulholland is sued in his personal and professional capacity.

8. At all times mentioned herein, Defendant, Richard Clukey, an individual, was duly appointed and acting as Jail Administrator for the Penobscot County Sheriff Department, and Penobscot County Jail, and was at all material times herein acting under the color of State Law; Defendant Clukey is sued in his personal and professional capacities.

9. At all times mentioned herein, Defendant, Dr. Joseph Fitzpatrick, an individual, as successor to Joseph Ponte, was duly appointed and acting as a Commissioner of the State of Maine Department of Corrections, and was at all material times herein acting under the color of state law and in his capacity as Commissioner, had oversight and control of the Penobscot county jail; Defendant Dr. Joseph Fitzpatrick is sued in his personal and professional capacity.

## Facts

10. From, on or about October 1, 2013, and at all times pertinent herein, at the Penobscot County Jail in the city of Bangor, County of Penobscot, State of Maine, Rikki Lynn White was incarcerated as an inmate.

11. At all times pertinent herein, Defendant, William E. Mulholland was a corrections officer for the Penobscot County Jail.

12. Rikki Lynn White, while incarcerated at the Penobscot County Jail, was approached by Corrections Officer Mulholland, and the following conduct occurred:

a. Ms. White was approached by C/O Mulholland one day while she was in jail, he asked her if she would be staying at 43 Palm St. in Bangor; this is Ms. White's mother's home, and also her address of record with the jail at that time.

b. On another occasion, C/O Mulholland told Ms. White that he had driven by 43 Palm St.

c. Both of these incidents made Ms. White very uncomfortable.

d. Thereafter, C/O Mulholland starting making extra efforts to seek out Ms. White, such as waking her up in the morning to say "good morning" to her, etc.

e. When C/O Mulholland was Ms. White's escort or deck officer, and had to transport her within the jail, he would bypass the elevator and make her take the stairs where there was no camera (Importantly, and on information, there is no camera in the hallway of the P Block either); while walking up the stairs behind her, C/O Mulholland would grab Ms. White's buttock and make sexual comments towards her.

f. On one occasion, C/O Mulholland told Ms. White that he would like to come visit her while she was in rehab and also take her out to dinner; he has also stated that he "didn't just want to fuck Ms. White, but that he wanted to make love to her."

g. On another occasion, when M. White was taking a shower, she dropped her soap and when she went to pick it up off the floor, the curtain opened and C/O Mulholland was standing there and handed the soap back to her and left.

h. After this incident, C/O Mulholland made repeated and relentless attempts to have Ms. White "flash" him and on at least one occasion she felt compelled to comply against her wishes.

i. C/O Mulholland told Ms. White that he was making a toy box for her young daughter.

j. C/O Mulholland offered to put money on Ms. White's books and also offered to talk to her lawyer at that time in an attempt to help her pending legal matters.

k. C/O Mulholland also told Ms. White that his cousin was an "enforcer" for the Hell's Angels in Florida, and that he could "take care of" the alleged victim in Ms. White's pending legal matter; this was a repeatedly made comment/threat to Ms. White by C/O Mulholland.

l. On two occasions when he entered her cell, C/O Mulholland kissed Ms. White without permission.

m. After her release on October 30, 2013, Ms. White received a Facebook message from C/O Mulholland stating that he was "sorry" and asking if she was mad at him; he further told her that he had "resigned" from the Sheriff's Office.

n. Then, on approximately November 28, 2013, the day before Ms. White's birthday, C/O Mulholland stopped Ms. White as she was leaving a store in the Bangor Mall in an attempt to talk to her.

o. Ms. White's emotional distress and PTSD from these alleged incidents was greatly aggravated due to a prior alleged incident that she was made to endure in approximately 2009, at the Penobscot County Jail as well through the fact that the Penobscot County Jail and Maine Department of Corrections refused to provide her with counseling, or proper care.

    i) In 2009, during a period of incarceration, Ms. White allegedly woke up to her mouth full of skittles and C/O Donnie Kearns kissing her; it is alleged that had placed the skittles in her mouth while she was asleep and began to kiss her.

    ii) Ms. White had reported this incident, and on information, ultimately C/O Kearns was fired; there was and remains to be backlash against her.

iii) Very recently, in approximately December, 2013, Ms. White was allegedly called "Rikki Kearns" by C/O Harriman, thus continuing the harassing, retaliatory conduct that she has had to endure since approximately 2009.

p. Because of the continued harassment, assaults, and improper conduct, *inter alia*, also constituting a violation of her civil rights, Ms. White did not report C/O Mulholland's conduct out of fear and intimidation.

q. The initial report/s was/were made by a cell block mate/s, and corroborated by others; to the best of Ms. White's recollection, the following is a list of women who were present and witnessed the above mentioned events regarding C/O Mulholland or were aware of them:

Marie Clark
Brianna Stein
Sheila Conderucci or Corriea
Jamie St. Ammand
Iris Laverdiere
Shanae Bloomquist
Megan Voisine
Tanya Wilcox
Lindsay McBrierty
Heather Jones
Gina Gross
Katie Plourde

13. On information and belief, this was approximately the sixth (6th) investigation into C/O Mulholland for similar misconduct, or for misconduct of any kind.

14. After the alleged misconduct was reported, Ms. White was transferred to another facility in Southern Maine, thus making her feel as though she was somehow to blame for the alleged abuses that she was made to endure.

15. As a result of the acts against her, Rikki Lynn White requested medical and or psychological attention numerous times from the Penobscot County Jail and Maine Department of Corrections, to no avail.

16. It has been determined that Rikki Lynn White suffered significant mental health injuries due to the Defendants' actions against her including diagnoses of Post Traumatic Stress Disorder (PTSD), anxiety, depression, and fear, pain, suffering, upset, humiliation, embarrassment, and the victim of retaliatory and harassing misconduct.

17. Rikki Lynn White has also suffered severe mental anguish and distress from the mistreatment and abuse endured at the hands of the Defendants; these injuries continue to this day and are permanent in nature.

18. William E. Mulholland resigned as a correction officer at Penobscot County Jail on or about 11/4/13; as Penobscot County officials allegedly failed to notify Maine Criminal Justice Academy thereof, in violation of 25 M.R.S.A. § 2807, as part of a cover-up by Defendants and to avoid criminal prosecution of Mulholland, as part of a resignation deal; further, on information and belief, other jail employees had committed similar acts against female inmates in the past, including but not limited to Ms. White, but Defendants took no corrective action thereon.

### Count I
### (Fourth, Fifth, and Eighth Amendment Violations)

19. The Plaintiff repeats and re-alleges paragraphs 1 to 16 of this Complaint as though fully set forth herein.

20. At all times relevant to this complaint, Defendants were acting under color of law.

21. By the actions described above, the Defendant's have deprived the Plaintiff of her clearly established rights guaranteed by the Fourth, Fifth, and Eighth Amendments to the Constitution of the United States to be free from an unreasonable search and seizure, accorded due process, and protection from cruel and unusual punishment.

22. The Defendant, Penobscot County, by and through its agents, Defendant Troy Morton,

FILED
OCT 01 2015
PENOBSCOT JUDICIAL CENTER
PENOBSCOT COUNTY SUPERIOR COURT
BANGOR DISTRICT COURT

Page 7 of 14

FILED
SEP 30 2015
PENOBSCOT JUDICIAL CENTER
PENOBSCOT COUNTY SUPERIOR COURT
BANGOR DISTRICT COURT

William E. Mulholland, and Richard Clukey, knowingly and with deliberate indifference and reckless disregard to the constitutional rights of the Plaintiff, maintained and permitted, official policies and customs and practices of permitting the occurrences of the types of wrong set forth herein above.

23. These policies and/ or customs and practices included, but not limited to, the deliberate indifferent training of their employees in matters pertaining to harassment of, assault of and of female inmates, and proper investigation of wrongdoing, and reporting thereof to the Maine Criminal Justice Academy and others.

24. In addition, Defendants Commissioner, Sheriff, and Jail Administrator, knew or should have knows of the customs and practices which led directly to the injuries sustained by the Plaintiff.

25. Such errant policies and/ or customs and practices of the Defendants, were the moving force behind the violation of Plaintiff, Rikki Lynn White's Fourth, Fifth, and Eighth Amendment rights and the Defendants, each of them, are liable for all of the injuries sustained by the Plaintiff set forth herein above.

### Count II
(Assault, False Arrest, False Imprisonment, and Invasion of Privacy)

26. The Plaintiff repeats and re-alleges paragraphs 1 to 23 of this Complaint as though fully set forth herein.

27. The Defendant, William E. Mulholland, assaulted Plaintiff without her consent or a valid basis therefore by accosting her, physically assaulting her, detaining her improperly and demanding she participate in sexual conduct with him, prohibiting her from leaving of her own accord and bullying, harassing and assault, and invading her privacy, at the jail and often after here release.

28. As a direct and proximate result of the abuse and actions against Plaintiff by Defendant Mulholland, which occurred in the scope, and course of his employment with Defendants, Plaintiff has been seriously damaged and injured. Her reputation has been damaged, she suffered physical and emotional damage and injury, fear, upset, and humiliation, all of which will continue in the future.

### Count III
### (Negligent Infliction of Emotional Distress- NIED)

29. The Plaintiff repeats and re-alleges paragraphs 1 through 26 of this Complaint as though fully set forth herein.

30. The actions of Defendant were so offensive, vile, malicious and directed at Plaintiff to injure her that she suffered emotional distress that a reasonable person could be expected to be harmed, and her privacy was so invaded, she became ill, her injuries will continue into the future and Defendants knew or should have known Plaintiff would be so effected by their misconduct.

31. As a direct and proximate result of the abuse of Plaintiff by Defendants, Plaintiff has been seriously damaged and injured, her reputation has been damaged, she suffered physical and emotional upset, distress, humiliation and damages, all of which will continue in the future.

### Count IV
### (Conspiracy Under 42 U.S.C. § 1985(3))

32. The Plaintiff repeats and re-alleges paragraphs 1 through 29 of this complaint as though fully set forth herein.

33. The Defendants did, acting under color of law, and in their official capacities, and individually, conspire to interfere with Plaintiff's civil rights and right to equal protection under the law as found in 42 U.S.C. § 1985(3) and the rights secured to her by the United States

Constitution and the Constitution and the Laws of the State of Maine.

## Count V
### (Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1983)

34. The Plaintiff repeats and re-alleges paragraphs 1 through 31 of this complaint as though fully set forth herein.

35. The Defendants did, acting under color of law, and in their official capacities, and individually, conspire to interfere with Plaintiff's civil rights and right to equal protection under the law as found in 42 U.S.C. § 1983 and the rights secured to her by the United States Constitution and the Constitution and the Laws of the State of Maine and conspired to inflict a wrong against and injury upon the Plaintiff.

## Count VI
### (Punitive Damages)

36. The Plaintiff repeats and re-alleges paragraphs 1 through 33 of this complaint as though fully set forth herein.

37. The conduct of the Defendants, each of them, and collectively, in their capacities, and individually, was intentional and malicious and said conduct was so reckless, deliberate, and outrageous, as to be beyond all bounds of decency and to imply malice towards the Plaintiff, particularly, since on information, other similar acts of misconduct against female inmates had occurred in the past with no corrective actions therefor, including against Plaintiff.

38. As a direct and proximate result of said intentional, reckless, deliberate, malicious and/ or outrageous conduct of the Defendant's, the Plaintiff was caused to suffer severe emotional and physical distress, humiliation, and mental anguish, all as more particularly set forth herein above.

## Count VII
### (Due Process- Fourteenth Amendment to the U.S. Constitution)

39. The Plaintiff repeats and re-alleges paragraphs 1 through 36 of this complaint as though fully set forth herein.

40. Plaintiff has a liberty interest in her bodily integrity.

41. The Defendants did, acting under color of law in their official capacities, and individually, violated that right.

42. The Defendants, each of them in their official capacities and individually, caused the Plaintiff harm by that said violation.

43. The Defendants, each of them in their official capacities and individually, were deliberately indifferent to the rights of the Plaintiff under the Fourteenth Amendment of the United States Constitution thus depriving her rights of due process to bodily integrity.

44. Further, the Defendants were deliberately indifferent to the Plaintiff's serious medical needs, both physical and mental.

45. Such deliberate indifference also violated the Plaintiff's right to due process under the Fourteenth Amendment to the United States Constitution.

### Count VIII
### (Maine Tort Claim Act- Assault)

46. The Plaintiff repeats and re-alleges paragraphs 1 through 43 of this complaint as though fully set forth herein.

47. The Defendants, each of them, knew or should have known that their failure to exercise due care, individually and in the performance of their duties towards the Plaintiff, would cause the Plaintiff to be subjected to assaults and suffer severe emotional distress.

48. The acts of the Defendants in causing the assaults and severe emotional distress of the Plaintiff constitute a breach of their duties towards the Plaintiff.

49. As a proximate result of the Defendants' breach of duty and the consequences proximately caused therefrom, including, but not limited to, nervousness, fright, humiliation and invasion of privacy, Plaintiff suffered an assault and consequential emotional distress, all to her damage.

### Count IX
### (Negligence- Maine Tort Claim Act)

50. The Plaintiff repeats and re-alleges paragraphs 1 through 47 of this complaint as though fully set forth herein.

51. The Defendants breached their duty of care required of them as part of their duties to the Plaintiff, including, but not limited to the following correction facility standards:

   a. Institutional Policies and Procedures (Adult Correctional Facilities), **Sections 1.1.2 (b), 1.1.4 (b), and 1.1.6 (b)**

   b. History and Philosophy of Corrections Level C – Basic, Sections 1.4.4 and 1.4.5

   c. Ethics and Values in Corrections Level C – Basic (1.5), **All Sections**

   d. Principles of Security Level C – Basic (2.1), **All Sections**

   e. Correctional Standards Level B – Pre-Basic (4.3), **All Sections**

   f. Interpersonal Behavior and Skills Level C – Basic (5.2), **All Sections**

   g. Supervision of Inmates/Offenders (5.3), **All Sections**

   h. Principles of Security Level B – Pre-Basic (2.1), **Section 2.1.7**

52. As a direct and proximate result of the negligence of Defendants, their breach of the standards of care and duty to the Plaintiff, the Plaintiff suffered severe and personal injuries as aforementioned

WHEREFORE, the Plaintiff Rikki Lynn White, requests Judgment as follows against the Defendants:

1. The Defendants be required to pay Plaintiff's general damages, including damages for violations of Constitutional and Civil rights, assault, pain and suffering, and intentional and negligent infliction of emotional distress, and invasion of privacy, and in a sum to be ascertained according to proof at the time of trial;

2. The Defendant be required to pay plaintiff's special damages, including but not limited to, lost wages, medical and counseling expenses, and attorney's fees, all in a sum to be ascertained at the time of a trial;

3. That Defendants be required to pay Plaintiff exemplary and punitive damages in a sum to be ascertained at the time of a trial;

4. With respect to all claims, the Defendants be required to pay Plaintiff's attorney's fees pursuant to 42 U.S.C. § 1988 and Title 5 M.R.S.A. § 4681 et. seq.;

5. That the Defendants be required to pay Plaintiff the cost of suit herein occurred;

6. That the Plaintiff have such other relief as the Court may deem just and proper under all of the circumstances, and;

7. That the Plaintiff demand judgment for compensatory and punitive damages and her fees and costs incurred as aforesaid.

### Demand for a Jury Trial

Plaintiff hereby demands a Trial by Jury pursuant to M.R. Civ. P. 38(b).

Dated at Bangor, Maine
September 1, 2015

Ezra A. R. Willey, Esq. (#5025)
Attorney for Plaintiff
WILLEY LAW OFFICES
P. O. Box 924
Bangor, ME 04402-0924
(207) 262-6222

Dated at Bangor, Maine
October 1, 2015

N. Laurence Willey Jr., Esq. (#808)
Attorney for Plaintiff
WILLEY LAW OFFICES
P. O. Box 924
Bangor, ME 04402-0924
(207) 262-6222

STATE OF MAINE
PENOBSCOT, ss.                                    Date: 10/1/15

    Personally appeared the above named Ezra A. R. Willey and subscribed and swore to the truth of the foregoing Complaint.

Name
Notary Public

Jessica V. Farley
Notary Public, State of Maine
My Commission Expires November 19, 2021

STATE OF MAINE
PENOBSCOT, ss.                                    Date: 10/1/15

    Personally appeared the above named N. Laurence Willey Jr. and subscribed and swore to the truth of the foregoing Complaint.

Name
Notary Public

Jessica V. Farley
Notary Public, State of Maine
My Commission Expires November 19, 2021

FILED
OCT 01 2015
PENOBSCOT JUDICIAL CENTER
PENOBSCOT COUNTY SUPERIOR COURT
BANGOR DISTRICT COURT

Page 14 of 14

FILED
SEP 30 2015
PENOBSCOT JUDICIAL CENTER
PENOBSCOT COUNTY SUPERIOR COURT
BANGOR DISTRICT COURT